1  RICHARD A. CANATELLA (SB # 53264)
   RONALD M. TORAN (SB # 84027)
2  Cotter & Del Carlo
3  4610 Mission Street, Suite 203
   San Francisco, CA 94112
4  (415) 584-5446
   (415) 584-5447 FAX
5
6  Attorneys for MARIA G. ADDIEGO, by and through her Conservator DEBRA J. DOLCH
   and RINA ADDIEGO
7

8              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
9                 **SAN FRANCISCO DIVISION**

10

11 MARIA G. ADDIEGO, by and through her        **No. C 05 4819 CRB**
   Conservator DEBRA J. DOLCH,
12 and RINA ADDIEGO,
                                               **COMPLAINT FOR DAMAGES AND**
13          Plaintiffs,                        **PROSPECTIVE RELIEF FOR CIVIL**
                                               **RIGHTS AND EMTALA VIOLATIONS;**
14                                             **JURY DEMAND; CERTIFICATION OF**
   v.                                          **INTEREST**
15
   CITY AND COUNTY OF SAN FRANCISCO,
16 CALIFORNIA PACIFIC MEDICAL CENTER,
                                               **450 Golden Gate Avenue**
17          Defendants                         **San Francisco CA 94102**

18

19 _____/

20

21

22

23

24

25

26

27

28

**COMPLAINT DAMAGES CIVIL RIGHTS, ETC.**

1

## TABLE OF CONTENTS

2   i. Jurisdictional Statement and Venue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

3   ii. Parties, Standing, and Municipal Policy  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

4
    iii. Joint Venture, Agency and/or Conspiracy  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
5
    iv. State actors, state action and color of law  . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
6
7   v. Relevant Facts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

8   vi. Specific EMTALA violations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

9   vii. Municipal Policy  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

10  viii.  First Claim for Relief for Violation of EMTALA . . . . . . . . . . . . . . . . . . . . . . . .  13

11  ix. Damages Proximately Caused by Violation of EMTALA  . . . . . . . . . . . . . . . . . .  16

12  x. Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

13  xi. Abstention doctrine not applicable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

14
    xii. Jury Demand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
15
16  xiii. Certification of Interested Persons  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

17

## TABLE OF AUTHORITIES

18

### Cases

19

20  *Addiction Specialists, Inc. v. Township of Hampton*, 2005 U.S. App. LEXIS 11136, 2005
    WL 1389110 at * 6 (3d Cir. June 14, 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
21  *CFI of Wisconsin, Inc. v. Wilfran Agricultural Industries, Inc.*, 1999 U.S. Dist. LEXIS
    16896, 1999 WL 994021 at *2 (E.D. Pa. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . .  19
22  Correa v. Hosp. San Francisco, 69 F.3d 1184, 1190 (1st Cir. 1995)  . . . . . . . . . . . .  14
    *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)  . . . . . . . .  18
23  *Flint v. A.P. Desanno & Sons*, 234 F. Supp. 2d 506, 510 (E.D. Pa. 2002) . . . . . . . . .  18
    *Great American Ins. Co. v. Stephens*, 2005 U.S. Dist. LEXIS 2836, 2005 WL 452349 at
24  *7 (E.D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
    *Marran v. Marran*, 2003 U.S. Dist. LEXIS 12234, 2004 WL 21448868 *11 (E.D. Pa.
25  2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
    *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 26-27
26  (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
    *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . .  18
27  *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 890 (3d Cir. 1997)  . . . . .  19

28

*Stevison by Collins v. Enid Health Sys., Inc.*, 920 F.2d 710, 712 (10th Cir.1990) . . . .  14
*Summers v. Babtist Medical Center*, 91 F. 3d. 1132 (8th Cir. 1996) . . . . . . . . . . . . . .  8
*Torres Nieves v. Hospital Metropolitan D. Puerto Rico*, 998 F. Supp. 127  (1998) . . . .  8

Constitutions, Statutes and Rules

28 U.S.C. section 1391(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
42 Code of Federal Regulations, §§ 413.65, 489.20 and 489.24 . . . . . . . . . . . . . . . .  1
28 U.S.C. section 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
42 U.S.C. Sec. 1395dd (e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
42 U.S.C. Sec. 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
42 U.S.C. § 1983  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
42 U.S.C. §§ 1395dd (d)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
42 U.S.C..§ 1395dd . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
42 USC §§ 1395dd (a), (e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
Cal. Health and Safety Code § 1797.201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
Emergency Medical Treatment And Active Labor Act . . . . . . . . . . . . . . . . . . . . . . . .  1

Other Authorities

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COME NOW** Plaintiffs MARIA G. ADDIEGO, by and through her Conservator DEBRA J. DOLCH, and RINA ADDIEGO, and allege:

### (i. Jurisdictional Statement and Venue)

1.   This Court has subject matter jurisdiction under 28 U.S.C. sections 1331 and 1343(a)(3), over this 42 U.S.C. § 1983 Civil Rights action,[1] based on, multiple violations of the Emergency Medical Treatment And Active Labor Act (hereafter EMTALA), section 1867 of the Social Security Act, 42 U.S.C..§ 1395dd, and 42 Code of Federal Regulations, §§ 413.65, 489.20 and 489.24.  EMTALA is enforceable by a private right of action in the U.S. District Courts by any individual who is injured as a result of its violation.  The statutory language of EMTALA is clear and straightforward: the civil enforcement provisions of the statute create a private right of action for any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of the statute. *See* 42 U.S.C. §§ 1395dd (d)(2)(A). The statute provides: "Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section, may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." Id.  Plaintiffs are individuals who suffered personal harm as a direct result of a participating hospital's violation of requirements of this section.

2.   Venue is proper in the Northern District of California under 28 U.S.C. section 1391(b), where the EMTALA violations occurred, where Plaintiff and Defendants reside

_____

[1] 42 U.S.C. § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.      1

and where the witnesses and evidence are located.

**(ii. Parties, Standing, and Municipal Policy)**

3.  Plaintiffs Maria G. ADDIEGO (hereafter "Maria") and RINA ADDIEGO

(hereafter "Rina") are residents of the City and County of San Francisco, California.

DEBRA J. DOLCH was appointed conservator of the person and estate of Plaintiff

Maria *sub. nom. Conservatorship of Maria D. Addiego;* San Francisco Superior Court,

No. 286790 by Order February 3, 2005, and is authorized by law to bring this action on

her behalf.

4.  Defendant CALIFORNIA PACIFIC MEDICAL CENTER (hereafter "hospital") is

a participating hospital (defined as a hospital that has entered into Medicaid provider

agreements under section 1395cc of Title 42, that has an emergency department,

sufficient to provide an "appropriate medical screening" to any individual who presents

himself or herself to the emergency room and requests an examination or treatment for

a medical condition.  *See* 42 USC §§ 1395dd (a), (e)(2) and § 1395cc.

5.  Defendant CITY AND COUNTY OF SAN FRANCISCO (hereafter "City") is a

municipality within 42 U.S.C. sec. 1983.  City has a policy of conspiring and combining

with hospital to violate EMTALA; the EMTALA violations are facilitated by City's violation

of Cal. Health and Safety Code § 1797.201 (hereafter "section 1797.201"),[2] regarding

---

[2] Section 1797.201 states in full: "Upon the request of a city or fire district that
contracted for or provided, as of June 1, 1980, prehospital emergency medical services,
a county shall enter into a written agreement with the city or fire district regarding the
provision of prehospital emergency medical services for that city or fire district. Until
such time that an agreement is reached, prehospital emergency medical services shall
be continued at not less than the existing level, and the administration of prehospital
EMS by cities and fire districts presently providing such services shall be retained by
those cities and fire districts, except the level of prehospital EMS may be reduced where
the city council, or the governing body of a fire district, pursuant to a public hearing,
determines that the reduction is necessary. [P] Notwithstanding any provision of this
section the provisions of Chapter 5 (commencing with Section 1798) shall apply."

the provision of "pre-hospital emergency medical services," by utilizing the San

Francisco Fire Department (hereinafter "SFFD") expanding to provide emergency

medical services on hospital grounds in San Francisco County at the expense of

taxpayers and persons receiving such services.[3] All the acts and damages incurred as

set forth herein took place and were incurred on real property owned and/or maintained

and operated by hospital located in City.

6. Plaintiffs have standing in that they suffered a personal injury in fact at the

hands of City pursuant to the foregoing policy, agreement and/or pattern of custom and

usage (hereafter "policy"). Plaintiffs were denied a liberty interest in a speedy and

efficient emergency medical screening examination for Maria, a 75 year-old "Elder"

within the meaning of the Elder Abuse Act (Cal. Welfare & Institutions Code section

15610.27), then suffering a life-threatening medical emergency. Hospital neglected,

abandoned and isolated Maria in severe and agonizing pain lying on hospital's parking

garage floor waiting for SFFD. Despite repeated requests of Maria's daughter Rina for

emergency medical services, and in callous disregard of Maria's serious life-threatening

medical emergency, hospital refused medical emergency screening and stabilization

treatment for Maria after she broke her hip on hospital premises in the parking garage

less than 30 yards from the hospital emergency department.

---

[3] In *County of San Bernardino v. City of San Bernardino*, 15 Cal. 4th 909 [64 Cal. Rptr. 2d 814, 938 P.2d 876] (1997) the California Supreme Court construed the meaning of section as restricting the ability of section 1797.201 cities and fire districts to unilaterally expand the scope of their services. (15 Cal. 4th at pp. 929-934.) The Court explained that although the Fire Protection District Law of 1987 authorizes fire districts to engage in emergency medical services, it does so subject to the limitations of the EMS Act. (§§ 13862, subds. (b) & (c).) Thus, the Court concluded that "section 1797.201 indubitably limits fire districts' ability to provide EMS, and indeed deprives such districts of the ability to provide these services altogether without the consent of the local EMS agency if the district did not provide or contract for such services as of June 1, 1980, notwithstanding the Fire District Law's general authorization of fire districts as providers of emergency medical services." (15 Cal. 4th at p. 933.)

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.     3

**(iii. Joint Venture, Agency and/or Conspiracy)**

7.  Plaintiffs are informed and believe and allege that in committing the acts alleged as to City and hospital, hospital was a contracting party, privatization partner, joint venturer, principal, agent or employer or employee of City, and at all times in doing the things alleged acting within the scope of such agreement, privatization arrangement, venture, agency or employment.  Alternatively, in committing the acts alleged, each Defendant was a conspirator and/or aider-abettor of each other Defendant in the violation of EMTALA, and was acting for its own pecuniary gain and financial advantage, and beyond the scope of authority as contractors, privatization partners, venturers, agents or employees, and outside the scope of fiduciary duties.  Defendants and each of them agreed to deprive Plaintiff of federally guaranteed EMTALA rights.  The conspiracy had its genesis when City determined to expand its emergency services in violation of section 1797.201, by implementing a profit-driven revenue-raising policy at the expense of medical emergency victims like Maria.  City and hospital had a meeting of the minds and agreed to deprive Plaintiffs of federally-guaranteed EMTALA rights and Plaintiffs' constitutional right to due process guaranteed by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. Sec. 1983.[4]

**(iv. State actors, state action and color of law)**

7.  There is a contract/relationship between City and hospital concerning the illegal delegation of hospital's EMTALA duties, providing that City responds to 911 emergency calls from hospital security regarding medical emergencies on hospital

---

[4] To establish a claim under §§ 1983, two elements are required: (1) conduct committed by a person acting under the color of state law that (2) deprives plaintiffs of the rights, privileges, or immunities that are secured by the United States Constitution or the laws of the United States. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Sargi v. Kent City Board of Educ.*, 70 F.3d 907, 910 (6th Cir. 1995).

property outside the main hospital building and within 250 yards of the hospital building itself.  In engaging in the conduct hereafter alleged, each Defendant was acting under color of state law.  City was acting in furtherance of its profit-driven, revenue-raising municipal policy expanding the provision of emergency medical services freely provided emergency medical victims outside hospital premises under Cal. Health & Safety Code section 1797.201 (hereafter "section 1797.201") to the provision of such services on hospital property.  The municipal policy is furthered by hospital and City policy providing for the unlawful delegation of hospital's EMTALA obligations pursuant to contract.  The objective of the municipal policy is to circumvent hospital's EMTALA obligations in furtherance of hospital's own illegal liability avoidance scheme, and raise revenue in violation of section 1797.201.  To accomplish this scheme, purpose and design, City and hospital constructed the illegal municipal policy designed to further hospital's avoidance of its EMTALA obligations and afford the City additional revenue at the expense of medical emergency victims, which is generally not permitted under section 1797.201.  The policy effectively deprived Plaintiffs of liberty interests having a source in federal law under EMTALA.  Specifically, the SFFD medical screening examination, packaging and scooping Maria was in violation of the agreement between SFFD and City, and in further violation of EMTALA which does not provide for the delegation of hospital's EMTALA duties.  The medical screening examination, packaging and scooping and transporting Maria from hospital property to the hospital emergency department was not a "prehospital emergency medical service" within section 1797.201. Notwithstanding, the medical screening examination, packaging and scooping and transporting Maria from hospital property to the hospital emergency department was performed by agreement between City and hospital and explicit encouragement of the City, all under color of law and in violation of EMTALA and 42 U.S.C. § 1983.

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.      5

8.  The agreement between City and hospital reflects parallel concerted action in a hospital liability avoidance scheme for hospital and revenue-raising scheme for City with the objective of circumventing hospital's EMTALA duties and section 1797.201.  In the foregoing sense, City exercised coercive power in assuming the unlawful delegation of hospital's EMTALA duties and provided encouragement to hospital thereby facilitating the latter's liability avoidance scheme.  By such conduct, City aided and abetted the accomplishment of hospital's illegal motivations to avoid its EMTALA obligations, and City its section 1797.201 constraints on revenue-raising, without justification, excuse or privilege.  The hospital liability avoidance and City revenue-raising schemes had source in Cal. Health & Safety Code section 1797.201, which suffices to satisfy the state action and under color of law requirements.  Section 1797.201 facilitated hospital's EMTALA obligations avoidance scheme.  There is thus a direct nexus between the City/hospital contract relationship, section 1797.201 and the EMTALA obligations avoidance scheme.  Finally, EMTALA gives the hospital no discretion, mandating hospital as a participating hospital (defined as a hospital that has entered into Medicaid provider agreements under section 1395cc of Title 42 and an emergency department) to provide an "appropriate medical screening" to any individual who presents himself or herself to the emergency room and requests an examination or treatment for a medical condition.  *See* 42 USC §§ 1395dd (a), (e)(2) and § 1395cc.  EMTALA is thus a statute of compulsion making hospital a state actor for purposes of § 1983 and the Fourteenth Amendment.

### (v. Relevant Facts)

9.  Plaintiff Maria is a 4 foot 11 inch tall, 76 year old physically handicapped widow who is illiterate, only speaks the Calabrese dialect of Italian and lives with her care-giver and daughter Rina.  Plaintiff Rina is Maria's only daughter and full-time care-

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.    6

giver.

10.  On or about September 2, 2004, within the two-year statutory period provided by EMTALA, *see* 42 USC §§ 1395dd (d)(2)(C) (2005), Maria was taken to hospital by Rina for a follow-up medical appointment in regard to recent surgery performed on her shoulder by hospital.  On that date Rina drove her car into the public parking garage located on hospital premises and parked in the first handicapped designated parking space immediately adjacent and contiguous to the area reserved for motorcycles.  That handicapped parking space was in plain view of the parking garage attendant's booth.

11.  Maria exited the parked car from the right front passenger's seat and with the aid of a cane held in her right hand proceeded to walk toward the rear end of the car heading toward the exit while carefully looking at the cars that were entering and exiting the parking garage.  While her attention was focused on the moving cars Maria's foot came in contact with the base area of a moveable wooden sign approximately 3 ½ feet high that bore the words **"$5 FLAT RATE."** The contact caused Maria to lose her balance and resulted in her falling toward the cement pavement of the parking garage very close to where cars were exiting the garage at "rush" hour, approximately 4:20 p.m. The sign was old, had a base comprised of four (4) wooden prongs that rendered it structurally unstable and a safety hazard.  When Maria began falling toward the pavement she reached out and grabbed the sign in an attempt to prevent herself from falling and injuring herself.  Maria continued to fall and crashed onto the cement pavement of the parking garage while pulling the sign down on top of her.

12.  The hospital parking garage attendant who was within 25 feet away from where Maria landed after her fall was immediately alerted by Rina who heard Maria's scream and found her mother lying on the pavement in extreme pain with the sign lying

on top of her.  The fall caused Maria to break her hip.  Although Maria was on the premises of hospital and within a short distance of the hospital emergency room where she could have received immediate medical attention for her injuries, and some relief from the extreme pain she was experiencing, despite Rina's importuning that her mother be taken to the emergency department, the hospital parking garage attendant called security instead.  He admitted that he was required to do so pursuant to hospital policy.

13.  For nearly one hour Maria was left lying on the cold garage pavement floor in extreme pain. The only assistance Maria received during this time was from Rina who was herself desperately seeking help for her mother from hospital employees that were passing through the parking garage.  The only response from hospital employees who passed by was their inquiry to Maria if she was in pain or if she could move her legs and acknowledgment that they could not arrange for emergency department assistance.  No assistance was provided.  After lying on the pavement for near one hour the SFFD and an ambulance arrived at the hospital parking garage.  Maria was screened, "packaged" and "scooped" and transported to the hospital emergency room a short distance away for treatment of her injuries.

14.  Within moments of Maria breaking her hip, Rina requested the hospital parking garage attendant to get her mother medical emergency room services from hospital's emergency department because she could not move, was in agonizing pain and was suffering a life-threatening emergency medical condition.  This request triggered provisions of EMTALA and 42 Code of Federal Regulations §§ 489.24 and 413.65, requiring hospital to promptly provide Maria with a "medical screening examination," administered by a qualified medical person, at a level of screening uniformly to all those who present similar complaints, to ascertain if she was suffering a

1  "medical emergency" and if she was, to provide immediate "stabilization treatment," the

2  absence of which could reasonably be expected to result in placing her in serious

3  jeopardy of a life-threatening medical emergency.  *See* 42 U.S.C. Sec. 1395dd (e)(1)

4  and *Torres Nieves v. Hospital Metropolitan D. Puerto Rico*, 998 F. Supp. 127  (1998)

5  and *Summers v. Babtist Medical Center*, 91 F. 3d. 1132 (8th Cir. 1996).

6  **(vi. Specific EMTALA violations)**

7  16.  In violation of the EMTALA,  42 Code of Federal Regulations §§ 489.24 and

8  413.65 and hospital's medicare provider agreement, the parking garage attendant

9  denied Rina's EMTALA request for emergency medical care.  Instead, in violation of

10  EMTALA, the parking garage attendant called the security department  because

11  hospital policy mandated that its personnel could only call the hospital security

12  department in response to persons injured in the parking garage regardless of any life-

13  threatening condition that person may be suffering.  Hospital's policy intentionally

14  delayed and violated Maria's EMTALA right to a prompt medical screening examination

15  that hospital had a duty to administer and as a result placed her in a serious life-

16  threatening condition that jeopardized her very life in violation of 42 U.S.C. Sec

17  1395dd(e)(1).

18  17.  At approximately 4:37 p.m., after the hospital security arrived at the Hospital

19  parking garage, Rina requested assistance from the hospital emergency department on

20  behalf of Maria because it was only 30 yards away and Maria could not move, then in

21  agonizing pain and suffering an EMTALA "medical emergency condition."

22  18.  This situation again triggered all the provisions of EMTALA, 42 Code of

23  Federal Regulations §§ 489.24 and 413.65, and hospital's medicare provider agreement

24

25

26

27  requiring that hospital provide "medical screening procedures" administered by a

28  qualified medical person to ascertain if Maria was suffering a "medical emergency."

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.    9

19.  In violation of EMTALA, 42 Code of Federal Regulations §§ 489.24 and 413.65 and hospital's medicare provider agreement, hospital security denied Rina's request.  Instead, security called 911 emergency services being mandated to do so pursuant to hospital policy set forth in Procedures and Policy Manual, Section D entitled Transport, Transfer and Documentation, that, in pertinent part, provides:

"Transport from a department or location on hospital property OUTSIDE OF A MAIN Hospital:  For transport to a dedicated emergency department from OUTSIDE THE MAIN Hospital WHERE THE DEDICATED EMERGENCY DEPARTMENT IS LOCATED, OR FOR MOVING PATIENTS BETWEEN CAMPUSES:

a. Call an ambulance (AMR or King American)

b. IF THE CONDITION IS IMMEDIATELY LIFE - THREATENING, or AMR or King American cannot accommodate the request, CALL 911."

20.  Hospital violated EMTALA, 42 CFR §§ 489.24 and 413.65, hospital's medicare provider agreement and when security denied Rina's request for emergency medical services, delayed Maria's right to a prompt medical screening examination reasonably calculated to identify her critical life-threatening medical condition in violation of 42 U.S.C. Sec 1395dd(e)(1).

21.  At about 4:47 p.m., pursuant to City policy, SFFD arrived at the hospital parking garage under agreement with City to provide "pre-hospital emergency medical services" pursuant to § 1797.201 of the Cal. Health & Safety Code.  The policy was profit driven in that the agreement between City and SFFD for "pre-hospital emergency medical services" was funded by the City budget; however, SFFD and City received additional payments from medical emergency victims like Maria who were required to pay for the illegal delegation of hospital EMTALA obligations, the medical screening, "packaging" and "scoop" and 30 yard transport to the hospital emergency department

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.   10

performed by City and SFFD.  By contrast, in glaring disparate treatment of medical emergency victims in the main hospital building who receive EMTALA emergency medical screening and stabilization services, i.e., immediate screening and stabilization, as compared with persons like Plaintiff Maria who are outside the main hospital but within the 250 yard EMTALA limit, who receive both inferior and delayed "pre-hospital emergency medical services" at the victim's expense.  The direct impact of the illegal delegation policy on Maria was that it delayed her emergency screening and stabilization by the amount of time it took City and SFFD to perform hospital's EMTALA duties, in this case around forty-plus minutes, with attendant pain and suffering and severe emotional distress.

22.  Maria's distressed situation lying on the hospital garage floor in severe pain implicated a corollary illegal policy between City and hospital involving a liability avoidance scheme for hospital facilitated by the illegal delegation of hospital's EMTALA duties to City.  Pursuant to the policy between City and hospital which policy violated Maria's EMTALA rights and hospital's medicare provider agreement, SFFD wrongfully obtained information about "medical insurance coverage" which caused unnecessary delay and further pain and suffering.

23.  Pursuant to the policy between City and hospital, the SFFD conducted an illegal `"emergency medical screening examination" and determined Maria was suffering an EMTALA "medical emergency condition" and pursuant to her request made on her behalf by Rina, "packaged" and "scooped" and transported Maria 30 yards to the hospital emergency department.  The medical screening examination was in violation of the agreement between SFFD and City, and in further violation of EMTALA which does not provide for the delegation of hospital's EMTALA duties.  The transportation of Maria from hospital property to the hospital emergency department was not a "pre-hospital

emergency medical service."  Rather, it was a profit-driven illegal delegation of EMTALA

duties by hospital at the physical, emotional and financial expense of Maria in violation

of 42 U.S.C. § 1983.

    24.  At or about 4:53 p.m. the SFFD transferred Maria to the hospital emergency

department and the SFFD Report was given to the hospital triage nurse pursuant to the

agreement, policy and pattern of practice, custom and usage between hospital and City.

Such conduct violated EMTALA, hospital's medicare provider agreement and

§1797.201 of the Health & Safety Code because City did not (and was not authorized)

to provide "prehospital emergency medical service" to persons suffering medical

emergencies on hospital property.

    25.  The SFFD Report on transfer of Maria to hospital emergency department is

a violation of EMTALA, hospital's medicare provider agreement and Maria's rights under

EMTALA because the report seeks information whether Maria can pay for the "pre-

hospial emergency medical services" received from City in violation of §1797.201.

Pursuant to agreement with City and hospital, SFFD then sent a bill for $458 to Maria

for "pre-hospital emergency medical services" provided September 2, 2004, under the

illegal delegation of EMTALA medical emergency services pursuant to the agreement

between City and hospital. The $458.00 was actually paid by Medicare and Maria's

private insurance.

**(vii. Municipal Policy proximately caused Deprivation of Federal Rights)**

    26.  City has a profit-driven policy to assume illegal delegations of hospital's

EMTALA duties pursuant to agreement with hospital by responding to 911 emergency

calls from hospital security involving medical emergencies on hospital property.

Pursuant to policy City responds to hospital 911 calls in medical emergencies and

assumes hospital's EMTALA duties by performing medical screening and stabilization

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.    12

treatment to medical emergency victims at the expense of the victim.  Hospital participates in the illegal delegation of hospital's EMTALA duties as a strategy of risk management and liability avoidance.  Pursuant to the policy, Maria was required to lie on hospital's cold garage floor in agonizing pain for near an hour waiting for a medical emergency screening and stabilization that should have been promptly provided by hospital but was denied despite numerous requests by Rina on behalf of Maria to hospital personnel for emergency department assistance.  Hence, under *Monell* v. *New York City Dept. of Social Servs.*, 436 U.S. 658, 690-695 (1978), City has municipal liability under § 1983 because City's "policy or custom" is directly connected and caused the violation of Maria's EMTALA rights.

27.  As applied to Plaintiffs, the City policy is effectuated by the hospital parking garage attendant who after a request for EMTALA emergency services is made as it was here by Rina on behalf of her mother Maria, a person suffering a medical emergency, from either contacting the emergency department or calling 911, in violation of EMTALA, even where the condition was life-threatening.  The City policy is effectuated by hospital policy requiring hospital personnel to call the security department.  The City profit-driven policy (to raise revenue from on-hospital-ground transports of medical emergencies to the emergency department) effectuated by hospital policy that prohibits hospital personnel from responding to requests for emergency department services in violation of EMTALA even if the requestor (or someone on her behalf) is suffering a medical emergency, and even if the medical emergency is life-threatening, and in a location outside, but within 250 yards, of the main hospital building, is in clear violation of 42 CFR §§ 413.65, 489.20 and 489.24.  Maria was thus denied federally guaranteed EMTALA rights to a prompt medical screening examination, conducted by a qualified medical person, to determine if she

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.    13

1   was suffering a "medical emergency," and the right to receive stabilization treatment if

2   she was suffering a "medical emergency".  Instead, as a direct consequence of City

3   policy, hospital policy and the agreement between hospital and City, Maria was forced

4   to lie on the hospital parking garage floor with a broken hip in severe and agonizing pain

5   for near one hour before City (not hospital) responded to Maria's medical emergency

6   condition.

7
                    **(viii.  First Claim for Relief for Violation of EMTALA)**
8

9           28.  Plaintiffs incorporate by reference herein the allegations of the preceding

10  paragraphs of the complaint.  Maria has an enforceable section 1983 cause of action

11  against hospital under EMTALA.  In the medical context, EMTALA requires a

12  participating hospital (defined as a hospital that has entered into Medicaid provider

13  agreements under section 1395cc of Title 42 and has an emergency department) to

14  provide an "appropriate medical screening" to any individual who presents himself or

15  herself to the emergency room and requests an examination or treatment for a medical

16  condition.  *See* 42 USC §§ 1395dd(a), (e)(2) and 1395cc.  Furthermore, section

17
18  1395dd(d)(2)(A) grants a personal right of action to "any individual who suffers personal

19  harm as a direct result of a participating hospital's violation of a requirement of this

20  section."  In describing the private cause of action, the Court of Appeals for the Ninth

21  Circuit stated that, to establish an EMTALA violation, a plaintiff must show that (1) the

22  hospital is a participating hospital, covered by EMTALA, that operates an emergency

23  department[;] (2) the patient has arrived at the facility seeking treatment; and (3) the

24  hospital [] did not afford the patient an appropriate screening in order to determine if he

25  or she had an emergency medical condition[.]  *See* Correa v. Hosp. San Francisco, 69

26  F.3d 1184, 1190 (1st Cir. 1995); *Stevison by Collins v. Enid Health Sys., Inc.*, 920 F.2d

27  710, 712 (10th Cir.1990)).  Hospital is a participating hospital (defined as a hospital that

28
    **COMPLAINT DAMAGES CIVIL RIGHTS, ETC.**   14

1   has entered into Medicaid provider agreements under section 1395cc of Title 42, that

2   has an emergency department, sufficient to provide an "appropriate medical screening"

3   to any individual who presents himself or herself to the emergency room and requests

4   an examination or treatment for a medical condition. *See* 42 USC §§ 1395dd(a), (e)(2);

5   42 USC §§ 1395cc. Rina on behalf of Maria presented her mother to the emergency

6   department and requested an examination or treatment for a critical medical

7   emergency, but was denied assistance.

8

9   27. The hospital policy stated in pertinent part below is in violation of EMTALA,

10  42 U.S.C. Section 1399dd(e)(1) and 42 U.S. Code of Federal Regulations sections

11  413.65, 489.20 and 489.24 because it provides for disparate services to persons

12  suffering medical emergencies with substantially similar complaints, including life

13  threatening medical conditions, depending on the location of where they are injured on

14  the Hospital's hospital campus, namely, inside of or outside of the main hospital

15  building. The hospital policy provides:

16

17  A. [The proper procedure to] transport from a department or location on hospital

18  property outside of a main hospital: for transport to a dedicated emergency department

19  from outside the main hospital where the dedicated emergency department is located,

20  or for moving patients between campuses is:

21  a. Call an ambulance (AMR or King American)

22  b. If the condition is immediately life-threatening, or AMR or King

23  American cannot accommodate the request, CALL 911.

24  B. An agreement with City to unlawfully delegate hospital's obligations under

25  EMTALA to persons suffering medical emergencies, and specifically to persons

26  suffering life-threatening injuries, outside of the main hospital building, but within 250

27  yards thereof, all at the expense of the person suffering the medical emergency violated

28

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.   15

1   Maria's EMTALA rights and deprived her of EMTALA federally guaranteed rights to

2   emergency medical care services.

3       26.  Within two years of filing this action, see 42 USC §§ 1395dd (d)(2)(C)

4   (2005), while acting under color of law, the defendant Hospital,  pursuant to a policy,

5   agreement and pattern of practice, custom and usage and with the encouragement of

6   Defendant City, violated Plaintiff's federally guaranteed EMTALA rights to emergency

7   medical services by denying her repeated requests for EMTALA  guaranteed

8   emergency medical services.  By wrongfully  delegating its duty to provide Addiego her

9   EMTALA guaranteed rights to emergency medical services to the SFFD pursuant to its

10  policy, agreement and pattern of practice, custom and usage with Defendant City,

11  hospital violated its medicare provider agreement, 42 CFR §§ 489.24 and 413.65, 42

12  U.S.C. § 1399dd and the Cal. Health & Safety Code §§1797 201 and 1797.220.

13

14      27.  Defendant hospital is not being sued in its capacity as a health care provider

15  because the damages and injuries suffered by Maria, as alleged hereinafter, were not

16  proximately caused by hospital's medical mis-diagnosis, mis-treatment or care.

17  Because hospital deliberately and repeatedly violated Maria's EMTALA rights.  Maria

18  was denied a prompt "medical screening examination" to determine whether she was

19  experiencing a "medical emergency" and was instead forced to lie on the floor of

20  hospital parking garage, in agonizing pain, because hospital delayed and/or refused to

21  conduct a prompt medical screening examination or to administer any treatment to

22  "stabilize" her emergency condition.  Hospital violated, the EMTALA , 42 U.S.C. 1395dd

23  as well as medicare provider agreement   Plaintiff was deprived her rights by the

24  Defendants, under color of law, in violation of 42 U.S.C. 1395dd and Sec. 1983.

25

26      28.  Maria has an enforceable cause of action against hospital under EMTALA

27  pursuant to 42 U.S.C.§1399dd (d) (2) (A) that states: Any individual who suffers harm

28

as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

**(ix. Damages Proximately Caused by Violation of EMTALA)**

29.  As a direct and proximate result, within two years of the filing herein, Plaintiffs was deprived of federally-guaranteed EMTALA rights without just cause or excuse and forced to suffer humiliation lying on the cold, hospital garage floor in the presence of gawking hospital personnel and members of the public.

30.  As a further proximate result of the conduct alleged, Plaintiff suffered physical and emotional pain, trauma, turmoil, worry, embarrassment, anguish and anxiety, as well as the loss of liberty (to be free from prolonged isolation, hospital neglect, and abandonment) in severe and agonizing pain lying on hospital's parking garage floor waiting for SFFD, despite repeated requests of Maria's daughter Rina, and in callous disregard of a serious life-threatening medical emergency.   As a direct result Plaintiffs were required to obtain legal counsel and become obligated to pay attorney's fees.

**(x. Assignment)**

31.  This case should be assigned to any United States District Judge, but not a United States Magistrate Judge.

**(xi. Abstention doctrine not applicable)**

32.  Although there are ongoing state judicial proceedings pending between the parties and thus *Heck v. Humphrey*, *Rooker-Feldman*, *Younger* and *Colorado River* are implicated, these decisions do not warrant abstention in this case.  The second prong of the *Younger* analysis, *i.e.*, whether the ongoing state case implicates important state

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.   17

interests, it is true that the premises liability and negligence issues in the state

proceedings are of traditional significance to states.  But the mere fact that the factual

background of this case arose out of a common law tort action based on premises

liability and negligence theories is not enough to establish that the federal sec. 1983

proceeding would interfere with state proceedings that involve important state interests

for *Younger* abstention purposes.  A federal claim alleging EMTALA violations by a

municipality and hospital pursuant to policy, as opposed to a claim challenging the

validity of the state's laws, does not implicate important state interests for *Younger*

abstention purposes.   Well established precedent distinguishes between claims relating

to alleged federal constitutional and statutory right violations and claims challenging the

validity of state law.  The latter do implicate important state interests making abstention

proper, because challenges to hospital's actions and motivations on state statutory

grounds are inextricably intertwined with the federal claim that the same acts violate

federal law.  But where, as here, the federal complaint alleges that hospital and City

violated Plaintiffs' federally guaranteed EMTALA rights, important state interests are not

implicated because in order to decide whether hospital and City engaged in willful and

deliberate EMTALA violations the District Court need not touch on the underlying state

common law tort and state statutory issues.  The federal complaint does not involve a

challenge to state statutory requirements incident to the delivery of emergency medical

services, nor does the federal complaint challenge hospital and/or City's actions in the

delivery of such services.  Plaintiffs are not asking this Court to invalidate the underlying

state statutory requirements.  Those issues are not even raised in Plaintiffs' state case,

which raises common law tort claims based on premises liability and negligence.

Moreover, the state action does not allege any federal statutory or constitutional claims.

    33.  Similarly, *Burford* abstention is inapplicable where timely and adequate

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.    18

1   state-court review is not available for the EMTALA violations, and there are no difficult

2   questions of state law bearing on policy problems of substantial public import whose

3   importance transcends the result in the case then at bar; or the exercise of federal

4   review of the question in this case and in similar cases would be disruptive of state

5   efforts to establish a coherent policy with respect to a matter of substantial public

6   concern.

7       34.  Defendants' request for abstention under *Colorado River Water*

8   *Conservation Dist. v. United States*, 424 U.S. 800 (1976) is similarly not warranted.

9

10  Although the Supreme Court has allowed for the possibility of abstention when there

11  exist parallel state proceedings, "abstention from the exercise of federal jurisdiction is

12  the exception, not the rule," and abstention is appropriate "only in the exceptional

13  circumstances where the order to the parties to repair to the state court would clearly

14  serve an important countervailing interest."  *Id.* at 813 (quoting *County of Allegheny v.*

15  *Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)); *Addiction Specialists, Inc. v.*

16  *Township of Hampton*, 2005 U.S. App. LEXIS 11136, 2005 WL 1389110 at * 6 (3d Cir.

17  June 14, 2005) ("Abstention rarely should be invoked, and is only appropriate in a few

18  carefully defined situations.") (quotations and citations omitted).  The threshold question

19  in applying the abstention doctrine is whether the federal and state actions are parallel."

20  *Flint v. A.P. Desanno & Sons*, 234 F. Supp. 2d 506, 510 (E.D. Pa. 2002) (Baylson, J.)

21  (citing *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997)).  Generally, cases are

22  considered "parallel" for the purposes of Colorado River when they are "truly

23  duplicative."  *Marran v. Marran*, 2003 U.S. Dist. LEXIS 12234, 2004 WL 21448868 *11

24  (E.D. Pa. 2003) (Baylson, J.) (quoting *Rycoline Products, Inc. v. C & W Unlimited*, 109

25  F.3d 883, 890 (3d Cir. 1997)).  "Actions are considered duplicative if the same parties

26  are litigating the same issues."  Id. (citing *Ryan*, 115 F.3d at196). The two cases "need

27

28

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.   19

not be identical," however, as long as there is "a likelihood that the state litigation will

dispose of all the claims presented in the federal case." *Flint*, 234 F. Supp. 2d at 510-11

(quoting *CFI of Wisconsin, Inc. v. Wilfran Agricultural Industries, Inc.*, 1999 U.S. Dist.

LEXIS 16896, 1999 WL 994021 at *2 (E.D. Pa. 1999)).  Here, the state court

proceedings are not parallel to the federal court action because the state court litigation

will not dispose of any of the claims presented here.  While Defendants may argue that

an additional party is named in the federal action, the "thrust" of the complaint before

this Court is the EMTALA claims, which hospital may argue has already been rejected

by the state court on substantive grounds in denying Plaintiffs' leave to state an

exemplary damage claim.  In cases where the parties are not identical, and there are

additional parties in the federal action who are *not* parties in the state action, the parallel

nature of the two actions is called into question.  Nevertheless, courts have found, under

certain circumstances not present here, that "despite the fact that the parties in the two

actions are not identical, the claims in the federal action are essentially the same as in

the state action and arise from the same facts, and that the resolution of the state claims

would dispose of the claims before the Court."  *Great American Ins. Co. v. Stephens*,

2005 U.S. Dist. LEXIS 2836, 2005 WL 452349 at *7 (E.D. Pa. 2005) (Baylson, J.).  Even

if the two actions were deemed parallel here, however, the "exceptional circumstances"

necessary to warrant abstention do not exist.  In *Colorado River*, the Supreme Court

identified six factors to be considered to determine whether such "exceptional

circumstances" are present: (1) which court first assumed jurisdiction over property; (2)

the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal

litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state

law controls; and (6) whether the state court will adequately protect the interests of the

parties. *Id.* at 818-19.  Here, the first factor is irrelevant, since neither court has

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.    20

assumed *in rem* jurisdiction over property.  As to the second factor, Defendants can

present no arguments that the federal forum is inconvenient.  The third factor -- the

desirability of avoiding piecemeal litigation -- has been limited by the Third Circuit to

cases in which there is "a strongly articulated *congressional policy* against piecemeal

litigation in the specific context of the case under review."  *Ryan*, 115 F.3d at 198

(emphasis in original).  Defendants cannot offer any such congressional policy exists

here.  Therefore, none of the first three factors weighs in favor of abstention.  The fourth

factor weighs in favor of abstention, as the state court undeniably obtained jurisdiction

before this Court.  The fifth factor, however, weighs against abstention, since the

EMTALA and sec. 1983 claims are brought under federal law.  As to the sixth and final

factor, this Court should not question the adequacy of the state forum to protect the

rights of the parties, so this factor "neither supports nor refutes abstention." *Flint*, 234 F.

Supp. 2d at 514  ("The adequacy of the state forum normally is only relevant when the

state forum cannot adequately protect the rights of the parties.") (citing *Moses H. Cone*

*Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 26-27 (1983)).  In

considering this combination of factors, the Court has heeded the Supreme Court's

direction that "no one factor is necessarily determinative; a carefully considered

judgment taking into account both the obligation to exercise jurisdiction and the

combination of factors counseling against that exercise is required.  Only the clearest of

justifications will warrant dismissal."  *Colorado River*, 424 U.S. at 818-19 (citation

omitted). The Court should find that consideration of the *Colorado River* factors does not

lead to the conclusion that "the clearest of justifications" is present here to warrant

dismissal. Id.  This case does not present the "exceptional circumstances" necessary for

abstention under Colorado River.

**(xii. Jury Demand)**

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.    21

1

2

35.  Plaintiffs demand a jury on all factual issues under Federal Rules of Civil Procedure, Rule 38(b) and Civil L.R. 3-6.

3

**(xiii. Certification of Interested Persons)**

4

5

6

7

8

9

10

11

36.  Pursuant to Civil L.R. 3-16, the undersigned counsel certifies he is not aware of any persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities other than the parties themselves to have either (i) a financial interest (of any kind) in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding, and therefore, as of this date, other than the named parties, there is no such interest to report.

12

**WHEREFORE,** Plaintiffs prays for:

13

14

15

16

17

18

A.  Against City and Hospital, actual damages according to proof not less than $50,000 for the prolonged isolation, hospital neglect, abandonment in severe and agonizing pain lying on hospital's parking garage floor waiting for SFFD, despite repeated requests of Maria's daughter Rina, and in callous disregard of a serious life-threatening medical emergency ;

19

B.  Exemplary damages according to proof against Hospital only.

20

21

22

23

24

C.  Declaratory or injunctive relief enjoining City and hospital from continuing a profit-driven policy to assume illegal delegations of hospital's EMTALA duties pursuant to agreement with hospital by responding to 911 emergency calls from hospital security involving medical emergencies on hospital property.

25

26

27

28

D.  Declaratory or injunctive relief enjoining hospital from directing hospital personnel after a request for EMTALA emergency services is made by a person suffering a medical emergency, from calling 911, in violation of EMTALA, even where the condition was life-threatening.

E.  Declaratory or injunctive relief enjoining hospital from prohibiting hospital personnel from responding to requests for emergency department services in violation of EMTALA where the requestor (or someone on her behalf) is suffering a medical emergency, in a location outside, but within 250 yards, of the main hospital building.

F.  Attorney's fees and expenses under 42 U.S.C. Sec. 1988.

G.  Costs and such other and further relief as justice requires.

Dated: November 28, 2004                    COTTER & DEL CARLO

                                            By: Richard A. Canatella

COMPLAINT DAMAGES CIVIL RIGHTS, ETC.    23